## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TODD CHRISTOPHER SCHWANZ**, | Case No. 3:13-cv-01101-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security | |
| Defendant. | |

Lisa R.J. Porter, KP LAW LLC, 16200 SW Pacific Hwy., Suite H-280, Portland, OR 97224. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Lisa Goldoftas, Special Assistant United States Attorney, Office of General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M.S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Todd Christopher Schwanz ("Schwanz") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for supplemental security income ("SSI") under Title XVI of the Social Security Act. For the

reasons discussed below, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Schwanz's Application

Schwanz was born March 25, 1967 and is 47 years old. AR 30. Schwanz holds a master's degree in computer engineering, never married, and lives alone in a HUD apartment for persons with disabilities. Schwanz received a traumatic brain injury in July 2004 and stopped working in July 2005 because of symptoms he primarily attributes to his traumatic brain injury. Schwanz had previously applied for, and was denied in 2008, SSI benefits. Schwanz protectively filed another application for SSI on February 23, 2010, alleging disability beginning February 19, 2009. AR 19. The Commissioner denied Schwanz's claims initially and upon reconsideration. *Id.* Schwanz subsequently requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* On February 10, 2012, the ALJ issued an unfavorable decision, finding Schwanz not disabled since the alleged onset date. AR 32.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay

or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*
*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The
Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the
Commissioner must show that the claimant can perform other work that exists in significant
numbers in the national economy, "taking into consideration the claimant's residual functional
capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966
(describing "work which exists in the national economy"). If the Commissioner fails to meet this
burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,
the Commissioner proves that the claimant is able to perform other work existing in significant
numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;
*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

At step one, the ALJ found that Schwanz had not engaged in substantial gainful activity
since the date of application, February 23, 2010. AR 21. At step two, the ALJ identified the
following severe impairments: depression; anxiety disorder, seizure disorder, alcoholism, status
post trauma, and surgeries to the left wrist. AR 21. At step three, the ALJ concluded that
Schwanz's impairment or combination of impairments did not meet or medically equal one of
the listed impairments in the regulations. AR 21-22. At step four, the ALJ relied on the testimony
of a Vocational Expert ("VE") and found that Schwanz was unable to perform any past relevant
work. The ALJ found Schwanz retained the following RFC:

> the claimant has the residual functional capacity to perform less
> than the full range of medium work . . . . His maximum lifting and
> carrying capacity is 50 pounds occasionally and 25 pounds
> frequently. He can never climb ladders, ropes, scaffolds. He can
> occasionally climb stairs. He can never balance. He can frequently
> stoop, kneel, crouch, and crawl. He can frequently reach, handle,
> finger, and feel. He should not work at heights or around heavy

machinery or chemicals. He is limited to simple routine tasks. He is limited to occasional contact with coworkers and incidental contact with the public.

AR 22-23.

The ALJ considered Schwanz's testimony; the medical testimony of physicians David Gostnell, Kipp Bajaj, Britton Frome, Sharon Eder, Martin Kehrli, Bill Hennings, Joshua Boyd, and Ryan Vancura; and the lay testimony of Elizabeth Cooper, Psychiatric Nurse and Mental Health Nurse Practitioner, David Eubanks, Qualified Mental Health Associate ("QMHA"), Athena Dickau, Qualified Mental Health Professional ("QMHP"), Arnold Schwanz (Schwanz's father), and Mark Lewis (Schwanz's friend); and the testimony of a VE. AR 21-30.

At step 5, relying on testimony of the VE, the ALJ concluded that Schwanz was able to perform the "the requirements of representative unskilled occupations at the light or medium exertional level" including "hand packer, DOT # 920.587-014" and "assembler, DOT #780.684-062." AR 31. The ALJ therefore determined that Schwanz was not disabled and denied his application for SSI. AR 32.

Following the ALJ's unfavorable decision, Schwanz filed an appeal on March 7, 2010 with the Appeals Council, but was denied review. AR 1. Consequently, the ALJ's decision became the final decision of the Commissioner that is subject to judicial review. Schwanz now seeks judicial review of that decision.

**DISCUSSION**

Schwanz argues that the ALJ erred by failing properly to: (A) evaluate the medical and lay testimony; (B) develop the record regarding Schwanz's potential cognitive disorder; (C) assess Schwanz's credibility; and (D) conduct a RFC assessment and include all applicable functional limitations.

## A.  Opinion Testimony

Schwanz argues that the ALJ failed properly to evaluate the medical opinions of Drs. Gostnell and Bajaj and the lay opinion testimony of Ms. Cooper.[1] The Court finds that the ALJ failed properly to address these opinions.

### 1.  Medical Opinion Testimony

#### a.  Legal standards

The Ninth Circuit distinguishes between three types of physicians' opinions: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally given greater weight than those of non-treating physicians and the opinions of examining physicians are generally given greater weight than those of non-examining physicians. *Garrison v. Colvin*, --- F.3d ----, 2014 WL 3397218 (9th Cir. July 14, 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). A treating or examining doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "'clear and convincing'" reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by the opinion of another physician, the "ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quotation marks and citation omitted). The ALJ is

---

[1] Schwanz's briefing argues that by failing properly to evaluate the testimony of Dr. Gostnell and "Plaintiff's treating providers" the ALJ consequently failed in his duty to develop the record. The Commissioner contends that Schwanz fails to argue this theory with specificity. The Court, however, finds that by identifying "treating providers" generally and providing page number citations to the records of Drs. Bajaj and Gostnell, and a record citation indicating Ms. Cooper as one of Schwanz's "primary care provider[s]" (who Schwanz's also refers to as his treating provider in his reply brief, *see* Dkt. 17 at 2), Schwanz articulates this argument with adequate specificity.

responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Id.*

### b. Consultative Examining Psychologist Dr. Gostnell

The Commissioner argues that the ALJ did not improperly ignore the opinion of Dr. Gostnell because the ALJ considered it throughout his opinion. Although the ALJ did cite to Dr. Gostnell's opinion to support certain findings, the ALJ failed specifically to address Dr. Gostnell's opinion in any detail and ignored numerous assessments and conclusions by Dr. Gostnell, including: (1) Dr. Gostnell assessed Schwanz with limitations in self-care and that Schwanz had diminished self-care abilities, noting that Schwanz appeared at the visit with "very poor" grooming and hygiene, a strong body odor, long unwashed hair and observing Schwanz's teeth in poor condition due to neglect; (2) Dr. Gostnell assessed Schwanz with limitations in his ability to understand simple instructions; (3) Dr. Gostnell found that Schwanz misunderstood simple interview questions, which had to be repeated or rephrased for him; (4) Dr. Gostnell found that Schwanz occasionally lost track of topic; and (5) Dr. Gostnell diagnosed Schwanz with cognitive disorder, not otherwise specified ("NOS"). AR 432-34. The ALJ summarily noted that Dr. Gostnell diagnosed Schwanz with a *mood* disorder NOS, but the ALJ omitted mention of Dr. Gostnell's diagnosis of a *cognitive* disorder NOS and finding that the cognitive limitations to which Dr. Gostnell opined were potentially the result of a head injury or due to a cognitive disorder.

The ALJ needed to provide, at a minimum, specific and legitimate reasons to reject Dr. Gostnell's opinions relating to Schwanz's cognitive disorder and limitations.[2] The ALJ failed

---

[2] To the extent the ALJ found Dr. Gastnell's opinions to be contradicted by another physician, the ALJ must provide specific and legitimate reasons to discredit Dr. Gastnell's testimony. To the extent the ALJ found Dr. Gastnell's testimony to be uncontradicted, the ALJ must provide clear and convincing reasons for rejecting that testimony.

to provide any reason to reject any of the opinions of Dr. Gostnell. In fact, the ALJ did not state that he was discounting any of Dr. Gostnell's opinions—the ALJ simply failed to address them. This is error.

Alternatively, the Commissioner argues that the ALJ was not required to address Dr. Gostnell's opinion because it lacked probative value. The ALJ, however, did not rely on this reason to discredit Dr. Gostnell's opinion. Indeed, the ALJ did not discredit Dr. Gostnell's opinion. The ALJ cites to Dr. Gostnell's opinion without any indication that the ALJ was discrediting the portions of Dr. Gostnell's opinion upon which the ALJ did not specifically rely. Notably, the ALJ does not address Dr. Gostnell's opinion when evaluating each of the medical opinions and lay witness evidence. Thus, the Commissioner's argument is unavailing. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

### c.  Treating Provider Dr. Bajaj

The ALJ referenced or cited to Dr. Bajaj's opinion to support several of the ALJ's statements and conclusions. The ALJ failed, however, to address the fact that Dr. Bajaj diagnosed Schwanz with real cognitive disorder, "probably from multiple head injuries" in December 2010 (AR 668); traumatic brain injury in 2011 (AR 659, 663); seizure disorder in March 2009 and March 2011 (AR 411, 414, 659, 668-69); post-traumatic stress disorder ("PTSD") in January 2011 (AR 663); anxiety disorder with social agoraphobia in March 2009 (AR 414); bipolar disorder in March 2009 and January 2011 (AR 414, 663, 668); alcohol dependence in March 2009 and December 2010 (AR 414, 668); and major depressive disorder in September 2010 (AR 669). The ALJ also failed to discuss Dr. Bajaj's December 2010 diagnosis,

under Axis IV, of a "[m]oderate to severe stressor of unemployment"[3] AR 668. Further, in

December 2010, Dr. Bajaj administered a Mental Status Examination and found Schwanz's

thought process tangential and circumstantial and that he often needed to be redirected. *Id.*

Treating source opinion, even if inconsistent with other substantial evidence in the

record, must be afforded deference and weighed using all the factors listed under 20 C.F.R.

§ 404.1527. Social Security Ruling ("SSR") 96-2p, *available at* 1996 WL 374188 (July 2, 1996).

As with Dr. Gostnell's opinion, the ALJ did not specifically discredit any portions of the opinion

of Dr. Bajaj. The ALJ erred by failing to explain the weight that he afforded to Dr. Bajaj's

opinion, failing to address the above diagnoses and findings by Dr. Bajaj, and failing to give

specific and legitimate reasons for discrediting any portion of Dr. Bajaj's opinion.

### 2. Lay Testimony of Ms. Cooper

Ms. Cooper is a Psychiatric Nurse and Mental Health Nurse Practitioner. As such, she is

not considered an "acceptable medical source" under the social security regulations. Under the

applicable regulations, only licensed physicians and certain other qualified specialists are

considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a); *see also* SSR 06-03p,

*available at* 2006 WL 2329939 (Aug. 9, 2006) (defining "acceptable medical sources" as

licensed physicians, licensed or certified psychologists, licensed optometrists, licensed

podiatrists, and qualified speech pathologists). Other health care providers who are not

"acceptable medical sources," such as "nurse practitioners, physician assistants, licensed clinical

social workers, naturopaths, chiropractors, audiologists, and therapists," are still considered

"medical sources" under the regulations, and the ALJ can use these other medical source

---

[3] "Axis IV is for reporting psychosocial and environmental problems that may affect the diagnosis, treatment, and prognosis of mental disorders (Axis I and II). . . . [psychosocial problems] play a role in the initiation or exacerbation of a mental disorder." Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV at 31.

opinions in determining the "severity of the individual's impairment(s) and how it affects the individual's ability to function."[4] *Id.*

To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ also may "'draw inferences logically flowing from the evidence.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

In considering how much weight to give "other" medical source opinion evidence, the ALJ should consider: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or area of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." SSR 06-03p, 2006 WL 2329939, at *4-5.

The ALJ gave Ms. Cooper's opinion "limited weight," because he found it: (1) was not supported by the record as a whole; (2) was unpersuasive because it was not supported by convincing evidence; (3) was inconsistent with another ALJ's 2008 benefits decision, and

---

[4] "Acceptable medical sources" are the only sources that can establish the existence of a medically determinable impairment, and the only sources that can be considered "treating" sources whose opinions are entitled to controlling weight. SSR 06-03p, 2006 WL 2329939, at *1.

(4) contradicted Schwanz's testimony that "he has been the same since 2002." AR 29. The Court does not find these to be germane reasons supported by substantial evidence in the record to reject Ms. Cooper's opinion.

In November 2010, Ms. Cooper diagnosed Schwanz with Bipolar Disorder with depression, alcohol abuse, PTSD, cognitive disorder due to multiple head injuries, vertigo, and seizure disorder. AR 450. In a check-box-type "mental impairment questionnaire" form, she also found that Schwanz's condition is one that will "degenerate or deteriorate over time"; that he would experience substantial difficulty with stamina, pain, or fatigue if he was required to work full time; that his problems will get worse if required to work full time; that he is extremely limited in his ability to respond appropriately to criticism from supervisors; and that even a minimal increase in mental demands or change in environment would be predicated to cause Schwanz to decompensate. AR 453, 457. In March 2009, Ms. Cooper indicated that Schwanz cannot concentrate or attend to what is happening when feeling concerned that there is a conflict with another person and feels like he cannot protect himself and that he experiences sudden outbursts. AR 419-20.

The ALJ's conclusion that Ms. Cooper's opinion is unpersuasive because she "failed to support her recommended limitations with convincing evidence" is unpersuasive. The ALJ stated:

> Ms. Cooper's opinion is not persuasive because she failed to support her recommended limitations with convincing evidence. For example, she supported her recommended limitations by noting diagnoses and symptoms. She stated that claimant is nervous and has difficulty sitting still. He has dysphoric mood and was depressed on December 2010. Thought process was tangential and circumstantial. He needs redirection and sometimes forgets to take medicine. This does not convincingly support inability to sustain fulltime work activity.

AR 29.

PAGE 12 – OPINION AND ORDER

The ALJ refers to only a small portion of the observations Ms. Cooper documented throughout her care of Schwanz. On the mental health questionnaire, when asked to "[i]dentify" the "signs and symptoms" associated with her identified diagnoses, Ms. Cooper indicated Anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; thoughts of suicide; blunt flat or inappropriate affect (at times); feelings of guilty/worthlessness; impairments in impulse control; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; persistent disturbances of mood or affect; memory impairment; emotional withdrawal or isolation; psychological or behavioral abnormalities associated with a dysfuynction of the brain with a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities; bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); hyperactivity; motor tension; emotional lability; pressure of speech; easy distractibility; recurrent and intrusive recollection of a traumatic experience, which are a source of marked distress; sleep disturbance decreased need for sleep; and a potential loss of intellectual ability of 15 IQ points or more, because, as Ms. Cooper indicated, "we have no reports of any IQ therefore didn't know if head injuries caused a change in IQ." AR 451. Ms. Cooper also noted in support of her findings that Schwanz's "problems [are] consistent even when medicated," lessening symptoms, but not improving cognition. AR 452. In March 2009, Ms. Cooper documented the episodic nature of Schwanz's mood, noting he has changes approximately every month. AR 419. She noted that Schwanz experiences symptoms of startled reflex, and jumpy hands.

PAGE 13 – OPINION AND ORDER

It is unclear which aspects of the symptoms and diagnoses by Ms. Cooper the ALJ determined did not support the limitations assessed by Ms. Cooper. As described above, the ALJ's discussion of Ms. Cooper's opinion fails to take into account the entire context of her assessment of and interaction with Schwanz. The ALJ's reliance on the conclusory assertion that Ms. Cooper's opinion lacked persuasive supporting evidence without explanation is an inadequate reason to reject her testimony. *See Shafer v. Barnhart*, 120 F. App'x 688, 695 (9th Cir. 2005) (unpublished) (finding error when the ALJ discredits opinion testimony on the basis of being inconsistent with other evidence but fails to describe how or why the allegedly contradicting evidence fails to support the rejected opinion). Similarly, the ALJ's conclusion that Ms. Cooper's opinion is inconsistent with ALJ Lazuran's 2008 opinion is not a germane reason to reject Ms. Cooper's opinion because the ALJ failed to *describe how or why* the 2008 decision is inconsistent with Ms. Cooper's opinion.[5] *Id.*

Finally, contrary to the ALJ's conclusion, Schwanz did not testify that "he has been the same since 2002." Rather, when asked whether his *concentration problems* have "gotten worse" since 2008, Schwanz testified: "I wouldn't say its gotten worse. . . . these are things that I don't normally keep track of, especially when you're [sic] getting sidetracked and so it's hard for me to say exactly you know when and how often." AR 55. Additionally, when asked whether his *depression or bipolar disorder* has "kind of been the same" since 2002, Schwanz responded "Yeah." AR 45. Neither of these statements undermine Ms. Cooper's opinion.

The ALJ erred by failing to provide a germane reason to discredit the lay testimony of Ms. Cooper. *See Molina*, 674 F.3d at 1111.

---

[5] The 2008 decision affirmed the Commissioner's denial of Schwanz's application for disability insurance benefits (DIB) and SSI, which he filed in June 19, 2004, alleging disability beginning in August 15, 1998. *See* AR 123, 127-40. The last piece of evidence ALJ Lazuran considered was from October 2007. *See* AR 137.

**B. Development of the Record**

Schwanz argues that the ALJ failed adequately to develop the record regarding Schwanz's potential cognitive disorder, as indicated in medical opinion evidence of state agency examining physician Dr. Gostnell, Schwanz's treating provider, and other sources. The Court agrees that the ALJ failed to develop the record regarding evidence that Schwanz had a cognitive disorder.

The Court finds beneficial a discussion of Schwanz's history of head injury and diagnoses of traumatic brain injury. In July 2004, Schwanz was assaulted and struck in the head with a skateboard. In addition to the 2004 assault, Schwanz has experienced other serious head injuries.[6] Since the 2004 assault, he has been diagnosed with traumatic brain injury, cognitive disorder, and organic mental syndrome. AR 414, 659, 663, 666, 402 (traumatic brain injury), AR 450, 668 (cognitive disorder), AR 94 (organic mental syndrome). The regulations specifically acknowledge the importance of neurological assessments in cases involving organic mental disorders. *See* 20 C.F.R. § 404 App. 1 §12.00D.8 ("Comprehensive neuropsychological examinations may be used to establish the existence and extent of compromise of brain function, particularly in cases involving organic mental disorders.").

The ALJ has an affirmative duty to ensure the adequate development of the record. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). The duty fully and fairly to develop the record ensures that the claimant's interests are considered, even when the claimant is represented

---

[6] *See* AR 429 (noting fractures involving Schwanz's face, cranium, nose, and jaw, [as] a result of martial arts incidents, motor vehicle accidence, and both street and bar fights); AR 532 (emergency room report dated October 2009 of an assault with "obvious head [injuries]" including a "blowout fracture of the left orbit" and a "clinical impression" of "closed head injury"); AR 659, 661 (describing that in March 2011, Schwanz hit his head when he ran into a car while riding his bicycle without a helmet); AR 662 (noting head injuries when five years old and in a vehicle crash in Schwanz's late adolescence or early 20s); AR 664 (noting in January 2011 a recent seizure resulting an instance where Schwanz "cracked his head").

by counsel. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ's duty to develop the record fully is "heightened where the claimant may be mentally ill and thus unable to protect [his or] her own interests." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The responsibility to develop the record "rests with the ALJ in part because disability hearings are inquisitorial rather than adversarial in nature." *Loeks v. Astrue*, 2011 WL 198146 (D. Or. Jan. 18, 2011) (citing *Sims v. Apfel,* 530 U.S. 103, 110-11 (2000)).

The duty to develop the record is not triggered in the event of a silent record that does not support disability. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998). The ALJ's duty to develop the record is triggered only by "ambiguous evidence or when the record is inadequate for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also* SSR 96-7P, *available at* 1996 WL 374186, at *2 n.3 (July 2, 1996) ("The adjudicator must develop evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists."). Where the duty to develop the record is triggered, such supplementation can include subpoenaing physicians, submitting questions to the physicians, continuing the hearing, or keeping the record open after the hearing to allow the record to be supplemented. *Tonapetyan*, 242 F.3d at 1150. The ALJ may also order a consultative examination in certain circumstances. 20 C.F.R. §§ 404.1519a, 416.919a.

Here, the record is not silent on the issue of the need for neuropsychological testing for Schwanz. On May 3, 2010, Dr. Gostnell diagnosed Schwanz's with cognitive disorder NOS after conducting a psychodiagnostic evaluation. AR 434. Dr. Gostnell concluded that "mental status testing revealed difficulties with concentration and memory, suggesting a need for more comprehensive psychological testing." AR 433. Dr. Gostnell stated that "Schwanz may be

experiencing a form of dementia associated with multiple minor head traumas that may also

occur as a result of intoxication. There is no indication in the record that he has ever had

neuropsychological testing." AR 434.

The Commissioner contends that Dr. Gostnell did not opine that neurological testing was

required or that Schwanz's had additional limitations, and that Dr. Gostnell ultimately concluded

that Schwanz's functional limitations were due primarily to severe alcohol dependence. The

Court rejects the Commissioner's characterization of Dr. Gostnell's report.

The statement by Dr. Gostnell on which the Commissioner relies appears to be part of a

summary of ALJ Lazuran's 2008 decision. Immediately following this statement, Dr. Gostnell's

offers his opinion that alcohol use may have predisposed Schwanz to cerebral hemorraghing.

Dr. Gostnell's full statement was:

> A fourteen-page denial of Social Security disability benefits by
> Catherine Lazuran, Administrative Law Judge was reviewed,
> revealing a history of inconsistencies in Mr. Schwanz's
> presentations and in the opinions of multiple providers. At issue is
> the severity of the head injury that he now claims accounts for
> many of his ongoing problems, with reference to medical
> documentation that he had been inebriated at the time and was kept
> only overnight, with a full recovery by the following day. In
> general, his functional restrictions are attributed primarily to severe
> alcohol dependence.
>
> It should be noted however that long-term alcohol consumption
> substantially increases the risk of cerebral hemorrhages, often
> microscopic and not necessarily revealed by imaging techniques,
> and that Schwanz may be experiencing a form of dementia
> associated with multiple minor head traumas that may also occur
> as a result of intoxication. There is no indication in the record that
> he has ever had neuropsychological testing.

AR 434.

Dr. Gostnell, therefore, acknowledged that Schwanz's dementia-like symptoms (i.e.,

cognitive problems) may be associated with multiple minor head traumas and that determining

whether these symptoms are associated with Schwanz's alcohol consumption or a prior head injury required additional neuropsychological testing. As Dr. Gostnell notes, there is no evidence in the record that Schwanz received a neuropsychological examination to determine the cause of his symptoms.

Even if Dr. Gostnell concluded that Schwanz's functional limitations were attributable to alcohol use, neuropsychological testing would remain necessary. In December 2010, Dr. Bajaj stated that Schwanz "has a history of head injuries and had a significant head injury and assault about four to five years [ago,] which was followed by memory and cognition problems and a significant decrease in his function" and diagnosed Schwanz with "[r]eal cognitive disorder, probably from multiple head injuries." AR 668. Dr. Bajaj also opined that it was "unclear" whether "alcohol could also be exacerbating some cognitive and mood problems," although he did not believe alcohol to be the source of Schwanz's cognition or mood problems. *Id.* Moreover, noting that Schwanz had been diagnosed with attention deficit disorder in the past, and that Schwanz claimed he cannot "stay on track" and is "really forgetful," Dr. Bajaj found it was "unclear if [Schwanz] had these cognitive problems since he has had his main head injury or if he has had this since adolescence or childhood." AR 667. Dr. Bajaj's concern regarding the role of alcohol in Schwanz's mental limitations rendered Dr. Gostnell's suggestion of the need for neurologic testing to determine whether alcohol use or brain injury are the source–impairments to Schwanz's mental limitations all the more necessary.

In addition to Dr. Gostnell and Dr. Bajaj, Ms. Cooper diagnosed Schwanz with cognitive disorder "due to multiple head injuries," *see supra* Part A.3, and QMHA Mr. Eubanks and QMHP Ms. Dickau similarly indicated that Schwanz's cognitive limitations were the result of traumatic brain injury. Mr. Eubanks opined that Schwanz's cognitive issues were associated with

his traumatic brain injury. In a drug and alcohol assessment conducted on August 6, 2009, Mr. Eubanks assessed Schwanz with "traumatic brain injuries that cause significant cognitive issues such as memory loss and motor disturbances." AR 396. Ms. Dickau stated in July 7, 2009 in a "Mental Health Assessment" that "[i]mportant medical issues which will need to be considered while treating [Schwanz] [is his] traumatic brain injury that causes significant cognitive issues such as memory loss and motor disturbances, as well as occasional seizures." AR 400.

The Commissioner argues that the record was not overly inadequate or ambiguous, citing emergency room reports from the 2004 assault. These references fail to dispel the inadequacy and ambiguity in the record. As the Social Security Regulations for assessing traumatic brain injury acknowledge, "mental findings immediately following a [traumatic brain injury] may not reflect the actual severity" of a mental impairment because the "rate and extent of recovery can be highly variable and the long-term outcome may be difficult to predict in the first few months post-injury." 20 C.F.R. § 404 App. 1 § 11.00F. The record is ambiguous as to whether Schwanz's symptoms and limitations are caused by substance abuse, traumatic brain injury and cognitive disorder, or both. Because significant evidence in the record suggests the possibility of a medically determinable mental impairment—*i.e.*, cognitive disorder—the ALJ had a duty to fully develop the record. *See Allen v. Astrue*, 2010 WL 5146526 (W.D. Wash. Nov. 19, 2010), *report and recommendation adopted*, 2010 WL 5146522 (W.D. Wash. Dec. 10, 2010) (finding that the ALJ erroneously failed to develop the record by not obtaining a neuropsychological assessment where record unclear as to whether the plaintiff's mental limitations were the result of a cognitive disorder, learning disorder, or both, and examining psychologist recommended the assessment); *Gama v. Colvin*, 2013 WL 5200025 (W.D. Wash. Sept. 16, 2013) (holding that "the

ALJ erred by failing to obtain the additional neuropsychological testing that Dr. Harmon stated was needed to assess plaintiff's cognitive deficits" and noting that "Dr. Harmon's opinion triggered the ALJ's duty to order a supplemental neuropsychological evaluation that includes objective testing necessary to properly evaluate the evidence of record").

The Commissioner also contends that the ALJ properly relied on the opinion of consultative examining physician Dr. Hennings, whose opinion constituted substantial evidence upon which the ALJ could rely because Dr. Hennings reviewed Dr. Gostnell's opinion and removed any concern regarding record insufficiency. Dr. Hennings's opinion, however, does not sufficiently negate the inadequacy of or remove the ambiguity in the record.

On May 5, 2010, Dr. Hennings noted in a "Development Summary Narrative" that Schwanz met with Dr. Gostnell, who indicated that Schwanz needed neuropsychological testing; Dr. Hennings opined: "Further testing would likely substantiate a stronger basis to consider a cognitive disorder, such testing would be unlikely to offer further limitations on [Schwanz's mental RFC]." AR 439. In June 2010, Dr. Hennings's evaluated Schwanz, acknowledged Dr. Gostnell's diagnosis of cognitive disorder in the evidence Dr. Hennings considered in making his assessment, and found that the "[e]vidence confirms . . . cognitive [disorder] NOS." AR 94. Dr. Hennings diagnosed Schwanz with Organic Brain Syndrome. *Id*. Notably, among the evidence Dr. Hennings did not consider was Dr. Bajaj's opinion or Ms. Cooper's mental health questionnaire providing significant insight into Ms. Schwanz's symptoms. The ALJ cited to Dr. Hennings's May report but failed to acknowledge Dr. Hennings's June report in which he confirmed Dr. Gostnell's cognitive disorder diagnosis and diagnosed Schwanz with Organic Brain Syndrome.

Dr. Hennings's conclusory statement that neurological testing is unlikely to affect Schwanz's RFC limitations is insufficient to dispel the inadequacy and ambiguity in the current record.

Although the duty to develop the record is not triggered where the record is silent and does not support disability, the record here was not silent and was sufficiently ambiguous and insufficient to trigger the ALJ's duty. The ALJ, therefore, erroneously failed to develop the record. *See Mayes*, 276 F.3d at 459-60; SSR 96-7P, 1996 WL 374186, at *2 n.3. In reaching this conclusion, the Court considers the enhanced duty of the ALJ to develop the record in cases involving claimants with potential mental illness; the consistent diagnoses of traumatic brain injury throughout the record; the diagnoses of cognitive disorder by Dr. Bajaj and Ms. Cooper; the diagnosis of organic mental syndrome by Dr. Hennings; the reservations of Dr. Gostnell in attributing Schwanz's dementia-like symptoms to alcohol consumption alone without testing; the findings of Mr. Eubanks and Ms. Dickau suggesting that Schwanz's cognitive limitations may be the result of traumatic brain injury; the similarity between the symptoms Schwanz has experienced since his traumatic brain injury and the symptoms of postconcussional cognitive disorder[7]; and the differences between cognitive disorder and organic mental disorder compared to disorders associated with depression or anxiety.[8] *Cf. Dschaak v. Astrue*, 2011 WL 4498832, at *20 (D. Or. Aug. 15, 2011) (holding that the ALJ erred in failing to develop the record because of the "significant differences between a learning disorder and a cognitive disorder,"

---

[7] *See e.g.*, AR 272-73, 396, 413, 450, 664, 667, 668, 669 (relating Schwanz's cognitive limitations, seizures, or vertigo to head injury); AR 47, 268, 402-03, 432, 451, 671 (noting Schwanz's loss of interest or ability in previous activities); AR 451, 453 (fatigue); AR 59 (irritability); AR 265, 396, 419, 420, 451, 666 (sleep disruption); AR 71, 268, 420 (social problems); AR 453 (Ms. Cooper opining to the degenerative nature of Schwanz's impairments).

[8] *Compare* 20 C.F.R. § 404 App. 1 11.00F (traumatic brain injury) and 12.02 (organic mental disorders), *with id.* at 12.04 (affective disorders) and 12.06 (anxiety disorders).

multiple diagnoses of a cognitive disorder, two doctor recommendations for additional testing, "compounded by [a] head injury . . . particularly given [Plaintiff's] reported memory and concentration problems," "the DSM-IV's illustration of a cognitive disorder as including such conditions as, 'following a head trauma, impairment in memory or attention with associated symptoms,'" and the plaintiff's report that since his head injury "'his memory hasn't been as good'").

## C. Plaintiff's Credibility

The ALJ discounted Schwanz's credibility on the basis of his (1) daily activities; (2) non-compliance with medication; (3) criminal history (history of driving while under the influence ("DUI") due to alcohol abuse); and (4) long history of alcohol abuse and marijuana use. AR 27. Schwanz expressly challenges the ALJ's reliance on Schwanz's activities of daily living and lack of compliance with medical treatment. Schwanz also implicitly challenges the ALJ's reliance on Schwanz's criminal history. Schwanz does not challenge the final basis for the ALJ's adverse credibility determination.

### 1.  Legal Standard

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

## 2. Activities of Daily Living

Schwanz contends that the ALJ erred in relying on Schwanz's activities of daily living to discredit his symptom testimony. The Court agrees.

There are two ways in which daily activities can form the basis of an adverse credibility finding: where the claimant's activities (a) contradict the claimant's other testimony or (b) meet the threshold for transferable work skills.[9] *See Orn*, 495 F.3d at 639. The Ninth Circuit has recognized that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that disability claimants need not "vegetate in a dark room" in order to be deemed eligible for benefits).

The ALJ found that Schwanz's activities of daily living were inconsistent with the limitations and restrictions to which Schwanz testified because Schwanz: (1) is able to clean his apartment and on occasion in October 2009 thoroughly cleaned his refrigerator; (2) bicycles to medical appointments; (3) commutes using public transportation; (4) shops in department and grocery stores; (5) participates in his hobby of sailing, sailing with his father in July, 2009;

---

[9] Daily activities meet the threshold for transferable work skills when the claimant is able to spend a "'substantial' part of [the] day engaged in transferable skills." *Orn*, 495 F.3d at 639.

(6) gets an average amount of exercise; (7) manages his finances independently; (8) collects bottles and cans for recycling; (9) does laundry at his father's house; and (10) visits friends' homes. AR 27. The Court finds that the ALJ's conclusion regarding Schwanz's daily living activities is not supported by substantial evidence in the record.

First, the ALJ found that Schwanz could clean and vacuum his apartment once a month. AR 22. Schwanz's ability to clean his apartment, as described in the record, does not undermine his testimony regarding his limitations. Rather, Schwanz's ability to clean his apartment was only during his intermittent "good days" and as required for his periodic HUD-mandated apartment inspections. *See, e.g.*, AR 666 (Dr. Bajaj noting that most of time Schwanz is in a depressed state, has periods where he does not go outside of his apartment, and "does not function well inside his apartment in terms of completing tasks and engaging in activities"); *id.* (Dr. Bajaj noting that "[t]hese long periods of decreased function and depression are interspersed by brief periods lasting up to a week of improved mood, increased activity, and decreased need for sleep and increased racing thoughts" where he will get "multiple tasks done, 'all in one day'"); AR 431 (Dr. Gostnell reporting that Schwanz admits "his apartment is always 'a mess,' and that he must force himself to clean up for the occasional required inspections, which occur about once or twice a year. . . . He becomes very anxious about these events, he has been written up twice, and usually barely passes"); AR 419 (Ms. Cooper noting that "[w]hen depressed and anxious, [Schwanz] crashes, he does not sleep, does not eat, does not clean"); AR 661 (Ms. Cooper noting that with respect to Schwanz's "mood," he has both "bad days and good days"); AR 664 (Ms. Cooper noting a recent episode involving three days "where [Schwanz] had tons of energy and got lots done in a very organized fashion; then went back to his lower energy level, and then got depressed for several days").

Second, Schwanz's ability to ride his bicycle to medical appointments does not undermine his testimony regarding his limitations. Schwanz stated at the January 2012 hearing before the ALJ that his vertigo symptoms prevent him from riding his bike *at times*. *See* AR 49-50 ("Sometimes I can't even get on it, other times I'm fine. . . . It's pretty much the vertigo. . . . I have trouble with my balance.").

Third, that Schwanz uses public transportation also fails to undermine his symptom testimony. The record indicates that Schwanz rides the bus "rarely," which is consistent with his symptom testimony. AR 432 (Dr. Gostnell noting in May 2010 that Schwanz "rarely" takes bus and gets transportation for doctor's appointments from Red Cross).

Fourth, Schwanz's shopping in grocery and department stores fails to undermine his symptom testimony. In frequent shopping in grocery stores and department stores is consistent with Schwanz's representations throughout the record. *See* AR 297 (Schwanz reporting that he goes outside "once a week to get food"); AR 48 (Schwanz's testimony during the hearing before ALJ that he "won't leave" his apartment "for a week at a time" allowing himself to go four days without eating or sleeping and that when he "absolutely ha[s] to, [he] will go to the store but [he] usually put[s] that off"); AR 59 (Schwanz's testifying that "I don't like to be in public, I only go to the store when I have to").

Fifth, the ALJ's conclusion that the fact that Schwanz went sailing in July 2009 undermines his testimony is not supported by substantial evidence in the record. During his testimony at the January 27, 2012 hearing, Schwanz testified that the last time he went sailing was "about a year ago" with his father, but that he has "a hard time with the position vertigo so sailing is a little difficult" and that "vertigo has taken out a lot of enjoyment of life" and that does

not like to go on the boat and he cannot look up at the sails. AR 47-48, 62. Schwanz's father[10]

testified that he and his son may make plans to go sailing, but that Schwanz will call and cancel

at the last minute. AR 30.

The record shows only one instance of Schwanz sailing. *See* AR 392 (Ms. Cooper,

reporting in a July 2009 visit with Schwanz that he went sailing with his father, which improved

his mood). While Dr. Bajaj generically reported that Schwanz "participates" in sailing, the record

reveals that Schwanz merely attempted one time after the alleged onset date to enjoy a hobby he

can no longer fully enjoy due to his symptoms. The fact that Schwanz went sailing one time five

months after the alleged onset date and has not gone sailing in the remaining three years is not

inconsistent with Schwanz's symptom testimony.

Sixth, the ALJ's conclusion that Schwanz gets an "average amount of exercise" does not

undermine Schwanz's credibility. Schwanz reported "no regular physical exercise" to

Dr. Gostnell in May 2010 and reported an "average amount of exercise" to both Mr. Eubanks

and Ms. Dickau in July of 2009. AR 400, 432. The ALJ failed to explain exactly how getting an

"average" amount of exercise undermines Schwanz's statements regarding his limitations. The

ALJ did not quantify what he considers an "average" amount of exercise  to be and how

someone with Schwanz's reported limitations could not engage in such exercise.

Seventh, the ALJ's conclusion that Schwanz's manages his finances independently is not

supported by substantial evidence in the record. Mr. Eubanks reported in a 2009 Drug and

Alcohol Assessment, discussing Schwanz's "Recovery Environment," that Schwanz "manages

his own money." AR 397. When asked by the ALJ what he "do[es] for cash," Schwanz's

testified that his "parents help [him] a lot with things like cat food and toilet paper." AR 44.

---

[10] The ALJ gave Schwanz's father's testimony at the hearing "some weight because it is
consistent with evidence of vertigo and diminished social functioning." AR 30.

Schwanz's father testified that he gives Schwanz's money on "rare" occasions but that he "tries" not to very often because Schwanz's "likes to be on his own." AR 71-72. Schwanz's father also testified that he opened a checking account for his son because his Schwanz "want[ed] to pay bills and things like that" and "[Schwanz] didn't have a checking account." AR 72. In addition, Schwanz stated that a "family friend" assist with bills related to his service cat (a doctor prescribed companion animal for depression). AR 44, 296. Moreover, Schwanz stated that he while he is able to pay bills and count change, he is not able to manage a savings account or use a checkbook. AR 298. During the hearing before the ALJ, Schwanz testified that he had been unable to seek treatment for bipolar disorder at a particular location (Providence) because he ran out of bus money—illustrating his lack of financial acumen. AR 57. Although Schwanz attempts to manage his money independently, he does so with limited success, and to conclude that his attempts to do so undermine his credibility with respect to his symptom testimony is tantamount to punishing Schwanz for attempting to lead a normal life.

Eighth, Schwanz collecting bottles and cans for recycling does not undermine his testimony regarding his limitations. Dr. Gostnell's report, which the ALJ cites for this conclusion, suggested that Schwanz does this activity out of necessity to supplement his income. *See* AR 432 (noting that, apart from his $202 or $223 monthly food allowance, Schwanz "has no other income, except what he can get from recycling cans and bottles"). The ALJ fails to explain how collecting bottles and cans contradicts Schwanz's symptom testimony. As discussed above, Schwanz has good days and bad days and there is no evidence in the record how frequently he collects the bottles and cans, how long his collection activities last, or where and how he collects them (*e.g.*, from friends, along the side of the road, etc.). There is not substantial evidence in the record supporting that this activity is inconsistent with Schwanz's reported symptoms.

Ninth, the ALJ's conclusion that the fact that Schwanz does laundry at his father's house contradicts his symptom testimony is not supported by substantial evidence in the record. The ALJ relies on a single sentence in the report of Dr. Ryan Vancura, noting that Schwanz does laundry at his father's house. Dr. Vancura also noted in the same section that Schwanz lives in HUD housing for people with disabilities, that he has trouble dressing himself, and that he showered for the first time in a month for his visit with Dr. Vancura. AR 445. The ALJ cites to no evidence showing how frequently Schwanz does laundry at his father's house, for how long, or whether it is Schwanz or his father who actually does the laundry. There is insufficient evidence showing that the level of activity engaged in contradicts Schwanz's symptom testimony.

Lastly, Schwanz's visitation with a friend does not undermine Schwanz's symptom testimony. Rather than going to "friends' homes," as the ALJ claims Schwanz testified, Schwanz testified to seeing *one* friend. AR 58. The record indicates that the friend to which Schwanz refers lives in the same apartment complex as Schwanz, Schwanz sees him approximately twice a month, and the friend is someone  Schwanz feels comfortable talking to because "he also has mental problems." AR 432.

### 3.  Non-Compliance with Medical Treatment

The ALJ also discredited Schwanz's symptom testimony because of his failure to comply with medical treatment. Schwanz argues that the ALJ erred in relying on Schwanz's failure to comply with medical treatment because his mental impairments inhibited him from exercising sound judgment in complying. The Court agrees.

An ALJ may consider a failure to follow a prescribed course of treatment when weighing a claimant's credibility. *See Tommasetti*, 533 F.3d at  1039-40. The ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse

credibility finding. *See Smolen*, 80 F.3d at 1284. An ALJ may discount a claimant's credibility due to an "*unexplained or inadequately explained*" failure to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039 (emphasis added); *see* SSR 96-7p, 1996 WL 374186 (noting that the ALJ must review the record to determine whether there are "any explanations that the individual may provide, or other information in the case record, that may explain . . . failure to seek medical treatment" before making an adverse credibility determination). "Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so." *Smolen*, 80 F.3d at 1284.

Schwanz admitted not being fully compliant with his medications. AR 433. The record indicates, however, that Schwanz's failure to comply was connected to his mental limitations. Schwanz regularly testified to his uncooperative memory. *See* AR 52, 667 ("I can't stay on track. I'm really forgetful"). In May 2010, Dr. Gostnell noted Schwanz "manages his own medications without assistance, but with some confusion. He procrastinates refilling his prescription, which requires a short bike ride to Fred Meyer pharmacy." AR 431. As mentioned, Schwanz has difficulty riding his bike due to vertigo. Ms. Cooper noted in November 2010 that Schwanz's psychiatric condition causes him to forget to take his medication. AR 545. In September 2010 and March 2011, Ms. Cooper assessed the need for a medication management "intervention." AR 671, 661. Schwanz's father stated in 2010 that he has "often heard [Schwanz] say, 'I forgot to take my meds.'" AR 266.

Because the record indicates that Schwanz's failure to comply was in part due to his functional limitations, he provided an adequate explanation and a good reason for having not been fully compliant with his medical treatment. *See Ray v. Comm'r of Soc. Sec. Admin.*, 2012 WL 1597264 (D. Or. Mar. 20, 2012), *report and recommendation adopted sub nom. Ray v.*

*Astrue*, 2012 WL 1598239 (D. Or. May 7, 2012) (indicating that for the ALJ properly to rely on a claimant's failure to follow a prescribed course of treatment as a basis to discredit a claimant's credibility, the claimant's failure must be intentional); *Mackey v. Colvin*, 2014 WL 3361911 (D. Or. July 8, 2014) (finding the ALJ's reliance on failure to comply with medical treatment was not a clear and convincing reason for finding claimant not credible where claimant's poor memory, supported by the record, provided a compelling reason for noncompliance).

### 4. Criminal History

The ALJ concluded that "[w]hile a claimant's criminal history is not itself evidence that precludes him from receiving disability benefits, it does present significant issues regarding the sincerity and truthfulness of [Schwanz's] application and testimony." AR 27. Here, the ALJ relied on Schwanz's history of DUI charges in discounting Schwanz's credibility. This reliance was in error. *See Sanders v. Barnhart*, 68 F. App'x 103, 106 (9th Cir. 2003) (unpublished) (holding that the "ALJ improperly disbelieved [Plaintiff's] statements concerning his impairments and their impact on his ability to work because [Plaintiff] ha[d] a criminal history of robbery and cocaine possession. That [Plaintiff] committed robbery and possessed cocaine does not bear directly on the credibility of his complaints about his physical and mental limitations" (quotation marks and citation omitted)).

### 5. Drug and Alcohol Abuse

The ALJ found that Schwanz's alcohol abuse raised doubts as to Schwanz's motivation to improve his functional ability and that Schwanz's alcohol and drug use undermined his credibility by revealing a pattern of voluntarily injurious behavior. Schwanz did not challenge this basis for the ALJ's adverse credibility determination. Consequently, as long as the ALJ's adverse credibility finding is supported by substantial evidence, it will be upheld. *See Hammock*, 879 F.2d at 501. As the Commissioner argues, that lack of motivation is an

appropriate consideration in determining a claimant's credibility. *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001). On this record, however, the Court finds the ALJ erred in relying on Schwanz's alcohol and drug use in discounting his credibility.

The ALJ failed to acknowledge that Schwanz's drug or alcohol use was the *related to* his head injuries. *See* AR 445 (Dr. Vancura noting that Schwanz "had a period of being clean and sober for four years until he had his traumatic brain injury, after which he relapse[d]"); 431 (Dr. Gostnell noting that Schwanz "reported about four years' sobriety that ended after his head injury, which resulted in a relapse"). Moreover, the ALJ failed to take into account evidence that Schwanz has a diminished understanding of his functioning, potentially impacting his ability to appreciate his drug or alcohol use. *See* AR 433 (Dr. Bajaj noting that Schwanz "seemed to have limited insight in regard to his psychological functioning"). Additionally, the ALJ failed to acknowledge that Schwanz's use of these substances was potentially self-medicating. *See* AR 293 (Schwanz reporting that his use of beer and marijuana is "for anxiety" and that such use "relaxes my anxiety"); AR 394 (Dr. Gostnell reporting that Schwanz contemplating a medical marijuana card); AR 457 (Ms. Cooper opining that Schwanz's "drug or alcohol abuse" is Schwanz "self-medicating an underlying mental or emotional problem"); AR 669 (Dr. Bajaj noting that Schwanz's reports drinking "to help 'because it quiets my brain'"). "[A]n ALJ cannot seek to justify negative credibility findings by 'ignoring competent evidence in the record that suggests an opposite result.'" *Rollins v. Massanari*, 261 F.3d 853, 859 (9th Cir. 2001) (quoting *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984)).

Under the circumstances of this case, the fact that Schwanz has a history of drug and alcohol use, without more, does not support the ALJ's conclusion that Schwanz lacks motivation

to improve his functional ability or that his drug and alcohol use "show a pattern of voluntary injurious behavior."

### 6. Conclusion

The ALJ's reliance on Schwanz's daily activities, non-compliance with medical treatment, criminal history, and continued alcohol and drug use to discredit Schwanz's testimony was neither specific, nor clear and

convincing. The ALJ therefore erred in discounting Schwanz's credibility. *See Lingenfelter*, 504 F.3d at 1036.

## D. RFC

Schwanz argues that the ALJ erred in failing to include all of Schwanz's functional limitations in the RFC. The Court agrees.

An RFC determines a claimant's "capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b)-(c). It characterizes "the most" a claimant can do in a "work setting," despite "limitations." 20 C.F.R. § 404.1545(a)(1). The "RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see* also 20 C.F.R. § 404.1528(b)-(c). The functional limitations caused by a claimant's medically determinable impairments include "medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2). The ALJ must assess "all of the relevant medical and other evidence" pertaining to a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(3), (4). Mental limitations potentially affecting one's ability to work include: "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting . . . ." 20 C.F.R.

§ 404.1545(c). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)..

The ALJ attributed Schwanz's symptoms and mental limitations to the impairments of depression, anxiety, alcoholism, and seizure disorder. *See* AR 24-27. This conclusion is not supported by substantial evidence. As discussed above, the ALJ failed properly to consider the evidence that Schwanz suffered from traumatic brain injury or cognitive disorder and failed properly to develop the record.

In *Hill v. Astrue*, the Ninth Circuit concluded that, "[b]ecause the ALJ excluded panic disorder from Hill's list of impairments and instead characterized her diagnosis as anxiety alone, the residual functional capacity determination was incomplete, flawed, and not supported by substantial evidence in the record." 698 F.3d 1153, 1161 (9th Cir. 2012). In *Hill*, the plaintiff was diagnosed with the separate impairments of anxiety and panic disorder. At the second step of the sequential analysis, the ALJ found a severe impairment of anxiety but improperly excluded the panic disorder diagnosis. *Id.* Here, like in *Hill*, the ALJ's construing Schwanz's mental limitations as being associated with depression and anxiety rather than a traumatic brain injury or cognitive disorder renders the RFC inadequate. *See also Potts v. Astrue*, 2011 WL 995856 (C.D. Cal. Mar. 17, 2011) (finding RFC inadequate where ALJ failed to develop the record regarding the plaintiff's mental limitations and erroneously discredited lay testimony because "[h]ad the ALJ developed the record further and obtained a mental assessment, the ALJ may have had to recognize additional limitations in his RFC").

**E.  Harmless Error**

An ALJ's failure to take into account a severe impairment is harmless where the ALJ considers resulting limitations at a later part of the sequential analysis. *See McCawley v. Astrue*, 423 F. App'x 687, 692 (9th Cir. 2011) (unpublished) (citing *Burch v. Barnhart*, 400

F.3d 676, 681-83 (9th Cir. 2005). The ALJ's failure properly to assess the medical testimony of

Drs. Gostnell and Bajaj and lay testimony of Ms. Cooper was not harmless, because these

opinions, if credited, may have resulted in additional occupational limitations.

With respect to Dr. Gostnell's opinion, the ALJ failed to address Dr. Gostnell's diagnosis

of cognitive disorder. The ALJ also ignored Dr. Gostnell's findings that Schwanz exhibited

"equivocal" short-term memory, that he could not understand simple interview questions, and

that questions had to be repeated or rephrased. Dr. Gostnell also identified limitations in

Schwanz's presentation, noting that Schwanz had very poor grooming and hygiene, a strong

body odor, and long unwashed hair. These limitations were not accounted for in the ALJ's RFC

assessment.

With respect to Dr. Bajaj's opinion, the ALJ failed to address Dr. Bajaj's diagnoses of the

severe impairments of traumatic brain injury, cognitive disorder, bipolar disorder, and PTSD.

The ALJ also ignored Dr. Bajaj's findings that under Axis IV Schwanz would experience a

"[m]oderate to severe stressor of unemployment," which may exacerbate Schwanz's mental

limitations in the event of poor work performance.

The ALJ also omitted Dr. Bajaj's finding that Schwanz's thought process was tangential

and circumstantial, that he often needed to be redirected, and that he experiences cyclical mental

health episodes, involving reduced sleep and food consumption, lasting more than a week at a

time. The fact that when analyzing Schwanz's RFC the ALJ mentions Dr. Bajaj's assessment of

traumatic brain injury does not negate the prejudicial effect of the error, as the ALJ attributed to

the traumatic brain injury only the effect of Schwanz's seizure disorder, never mentioning the

cognitive effects that Dr. Bajaj indicated the traumatic brain injury caused. The failure fully to

assess Dr. Bajaj's opinion was prejudicial because the ALJ ultimately concluded that Schwanz's seizure disorder was well controlled.

With respect to Ms. Cooper, the ALJ failed to address Ms. Cooper's diagnoses of cognitive disorder and bipolar disorder. The ALJ also omitted Ms. Cooper's conclusions that: (1) Schwanz's condition is one that will degenerate or deteriorate over time; (2) Schwanz would miss up to four work days per month; (3) Schwanz would experience substantial difficulty with stamina, pain, or fatigue if he was required to work full time; (4) Schwanz's problems will get worse if he is required to work full time; (5) Schwanz is extremely limited in his ability to respond appropriately to criticism from supervisors; and (6) even a minimal increase in mental demands or change in environment may cause Schwanz to decompensate. Additionally, the RFC did not account for Schwanz's episodic mood changes, as Dr. Bajaj also opined to. Because the RFC failed to account for these limitations, it was legally inadequate and the error was not harmless.

Finally, the ALJ's erroneous discounting of Schwanz's symptom testimony was not harmless because his testimony provided additional limitations unaccounted for in the RFC. First, Schwanz stated that when angry or intimidated he experiences sudden outbursts of anger and loss of vision and concentration. AR 420. Schwanz also indicated that when distressed he does not eat or sleep properly and that this exacerbates his seizure activity. AR 51; *see* AR 419, 666. Schwanz also stated that when he is concerned that there is a "conflict with another person" and "feels like he cannot protect himself" he is unable concentrate or attend to what is happening, and he experiences sudden outbursts. AR 419-20. The RFC assessment fails to account for these limitations or how they would impact his vocational options.

The Court finds that the ALJ's errors regarding opinion testimony were not harmless. As recognized in *Shepard v. Colvin*, where the ALJ erroneously omits from consideration an opinion that is "contradictory to the evidence relied upon" by the ALJ, the court "cannot apply harmless error analysis . . . for to do so, the Court would have to make an assessment of the value of [the erroneously omitted evidence], or at the least, engage in a speculative, predictive exercise as to how the ALJ or the Appeals Council would have evaluated this evidence." 2013 WL 5183462, at *1 (C.D. Cal. Sept. 11, 2013); *see Oliver v. Astrue*, 2013 WL 211131 (N.D. Cal. Jan. 16, 2013) (finding the ALJs silent and erroneous rejection of treating providers' opinion not harmless where treating provider found the claimant experienced cognitive delay, directly conflicting with the ALJ's conclusion that the record contained no evidence of cognitive disorder, because "evidence of cognitive delay from a treating source" could cause a reasonable ALJ to reach a different disability determination).

Similarly, the ALJ's failure to develop the record was not harmless. Unless the reviewing court is confident that no reasonable ALJ would have reached a different conclusion if the error had not occurred, the error was not harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Indeed, had the ALJ received neurological testing confirming the findings of Drs. Gostnell, Bajaj, and Hennings, and Mr. Eubanks, Ms. Dickau, and Ms. Cooper, the ALJ may well have reached a different conclusion. Because a reasonable ALJ could find that the presence of a cognitive impairment could preclude Schwanz's "from returning to gainful employment" the error was not harmless. *Id.*

Finally, the ALJ's failure properly to assess Schwanz's RFC was not harmless because of the ALJ's reliance on the belief that symptoms associated with Schwanz's anxiety and depression (which the ALJ construed as his mental limitations) were effectively controlled by

Schwanz's medications. Had the ALJ properly attributed Schwanz's mental limitations to traumatic brain injury or cognitive disorder, the ALJ could have reasonably reached a different conclusion. *See id.*

## F.  Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and may conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *See id.*

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed only where: "'(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.'" *Id.* (quoting *Benecke*, 379 F.3d at 593). The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (quotation marks and citation omitted).

Because outstanding issues remain that the must be resolved and the record is unclear as to whether the ALJ would have found Schwanz disabled absent the aforementioned errors, the court remands for further development of the record and proper evaluation of the improperly discounted testimony.

## CONCLUSION

The Commissioner's decision that Schwanz is not disabled is **REVERSED** and this case is **REMANDED** for further proceedings as directed herein.

**IT IS SO ORDERED**.

DATED this 22nd day of September, 2014.

/s/ Michael H. Simon_____
Michael H. Simon
United States District Judge